Anoush Hakimi (SBN 228858)
anoush@handslawgroup.com
Peter Shahriari (SBN 237074)
peter@handslawgroup.com
**THE LAW OFFICE OF HAKIMI & SHAHRIARI**
1800 Vine Street
Los Angeles, CA 90028
Telephone: (888) 635-2250
Facsimile: (213) 402-2170

Attorneys for Plaintiff-Relator,
**RELATOR, LLC**

**FILED**
Jul 26, 2022
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

# SEALED

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** <br><br> Plaintiff, <br><br> *ex rel.* **RELATOR LLC**, a California limited liability company, <br><br> Relator, <br><br> v. <br><br> **HOWARD D. KOOTSTRA,** an individual, **GOLDEN EMPIRE MORTGAGE, INC.**, a California Corporation; and DOES 1-10, <br><br> Defendants. | Case No. <br> 1:22-cv-0924-DAD-BAK <br><br> **COMPLAINT FOR VIOLATIONS OF FEDERAL FALSE CLAIMS ACT** <br><br> **FILED *IN CAMERA* UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)** <br><br> <u>**DO NOT PLACE ON PACER**</u> <br><br> **JURY TRIAL DEMANDED** |

Plaintiff RELATOR LLC (hereinafter referred to as "Plaintiff") complains of

**HOWARD D. KOOTSTRA,** an individual, **GOLDEN EMPIRE MORTGAGE,**

---

COMPLAINT

**INC**., a California Corporation; and DOES 1-10,

## I.    **INTRODUCTION**

1.    In this matter a mortgage lender and his lending business falsified documents in order to take PPP (Paycheck Protection Program, *hereinafter* "PPP") loan which they knew was obviously <u>prohibited</u> because they are lenders, embezzling millions of dollars in relief money while depriving other eligible businesses and workers of desperately needed aid. They raided the public purse, using the program as a windfall. They had no economic need for the loan. Defendant's mortgage business was booming. They did not need any financial assistance from the US taxpayer. The PPP was used as a profiteering opportunity. Astonishingly, they then falsified forgiveness documents which were presented to the government to obtain loan forgiveness, billing millions to the US taxpayer and draining the program of aid funds. The money was squandered on unauthorized expenses. Now the PPP is running dry. The American people have a right to be angry.

2.    Golden Empire Mortgage, Inc. (*hereinafter* "GEM") applied for and received a PPP loan for a **$6,415,482.00**, purportedly to cover payroll costs, however GEM falsified many documents in order to get this loan and its forgiveness. GEM and its individual Defendant owner:

    a.  Falsified loan eligibility;

COMPLAINT

b.  Falsified allowable payroll costs;

c.  Falsified the use of the loans on authorized expenses;

d.  Falsified the economic need for the loan; and

e.  Falsified the need for loan forgiveness

3.      Many Americans lost their jobs during the pandemic and many small businesses closed, because the PPP money ran out. Many people are still losing their jobs. At the same time, Howard Kootstra and his company bilked the PPP for millions of dollars in aid funds. They were <u>not</u> allowed to take this money. They did not need it. They did not return it. They used the money on unauthorized expenses. As a curtain act of corporate greed and misappropriation, they obtained loan forgiveness, foisting millions of dollars onto the shoulders of US taxpayers.

4.      <u>Obvious Regulations Regarding Money Lenders</u>. GEM applied for and received a PPP loan for **$6,415,482.00**, purportedly to cover payroll costs, however this loan was not authorized because GEM is a <u>money lending</u> business and therefore *ineligible* to receive PPP loans. After receiving the loan GEM did not return the money, but rather obtained total loan forgiveness, billing the cost to the American taxpayer. While the vast majority of American industries are allowed to take PPP loans, a very small number of industries are not allowed, such as money lenders. The rationale for this restriction is that money lenders have money on hand to cover their worker costs, and money lenders are not financially suffering like

other business types.

5.     <u>No Economic Necessity and Mortgage-Backed-Securities (MBS)</u>. The SBA rules explaining the purpose of the loan are clear: to help struggling businesses pay their workers. There was no "need" or "economic necessity" to pay Defendant's payroll expenses.[1] GEM cannot show any decline in revenue during the pandemic. In fact, during this time period GEM, just like most mortgage lenders, experienced record profits. The revenue increase was an industry wide phenomena. This is not only because housing prices and purchases have dramatically increased since 2020 and continue to increase (especially in California), but also because of the Federal government's policy to purchase Mortgage-Backed-Securities (MBS) which provided mortgage lenders like Defendant a steady source of high income.[2]  It is very unlikely Defendant suffered any economic downturn. Quite the opposite:  Defendants enjoyed a major increase in revenue. It did not need the loan. GEM had a very lucrative year. GEM offices remained open and business was actively continuing and increasing in volume and profitability. It was a banner year for GEM and its owner. They had absolutely no

---

[1] They did not need the loans. They took advantage. GEM is not a small business in dire financial straits, but rather a well-financed finance company which was enjoying higher profits. Public information shows their revenue was not declining, and their own statements indicate massive growth and profits. Defendant cannot show "economic necessity" in needing the loans to continue business operations.

[2] Agency MBS purchases are issued by the Federal government. The US Federal Reserve has a $1.25 trillion program to purchase mortgages which was restarted on March 15. 2020 as a result of the COVID-19 crises. The result of this program is provide mortgage lenders with a guaranteed way to sell their mortgage assets. Mortgage lenders like Defendant enjoyed record profits during this time and benefited greatly from this program.

COMPLAINT

need for a PPP loan, let alone for that much money. They took advantage of the PPP program and used it as a windfall.

6.     Unauthorized Expenses. PPP funds must only be used on authorized expenses. PPP funds are:

NOT authorized for direct lenders

NOT authorized for a business which has no economic need for the loan;

NOT authorized for payroll costs of in excess of $100,000; and

NOT authorized for businesses or individuals who fraudulently submit applications and supporting documents

7.     Direct Lending. GEM was ineligible to receive any SBA loans whatsoever because it is a lender. While almost every industry type is allowed to take PPP loans, a very few select number of industries are not permitted, including mortgage lenders like GEM. The rationale is that large cash rich money lenders which have the resources to pay their own payroll expenses should not take away money from small businesses which don't have ready access to liquid funds. Defendant's business type it ineligible for SBA loans because they are **money lenders**.[3] Therefore, Defendant's certification was false because **they are the type of business/industry which is prohibited from SBA loans**. GEM is a direct lender that provides money loans to consumers, for mortgages.

8.     NAICS Code 522292. On its application, Defendant admits to its

_____

[3] GEM is a direct lender. They specialize in home mortgage loans.

business function as a *lender* by reporting its industry type with the NAICS code 522292, which is for lending companies that use real estate as collateral. Despite all this, the company falsely reported to the SBA that it was permitted to take the loans even though SBA has clear rules prohibiting loans to lenders.

9.  <u>Defendants Obviously Knew Their Loan Applications Were Illegal</u>. Defendants falsified their eligible business expenses on their applications as well as the forgiveness application. GEM is a sophisticated company with extensive history in the lending industry. They knew full well lenders are not eligible to receive SBA 7(a) loans or PPP loans, nor were they eligible for loan forgiveness. Defendants intentionally ripped off a government aid program, needed by working families to survive.

10.  <u>Money Not Returned</u>. The loan was taken by a business which was not allowed to take even one penny in loans, let alone millions of dollars. The **$6,415,482.00** in funds should have been returned immediately. This loan should never have been sought in the first place. Certainly, no forgiveness should have been sought.

11.  <u>Inflated Number of Jobs Reported.</u> In its loan application GEM deceptively claimed to have 489 jobs. This number, 489, cannot be correct. It is a fabricated number which was provided by Defendants to obtain a larger sum loan. GEM does not have that much total square footage at its offices. Based on a

standardized formula. In order to house 489, over 100,000 square footage of office space would be required. Even assuming operation in other states and out of office workers, 489 employees on regular payroll is an *inflated number* based on square footage reported and online sources regarding company size. [4] A look at their corporate headquarters shows a modestly sized office which could house between 20-50 employees at most. It is clear that GEM inflated the true number of people on staff.

12.    <u>Further Falsification on Loan Forgiveness</u>. Defendant's falsified further documents in order to receive loan forgiveness, foisting the costs on the American taxpayer while depriving small businesses and their employees funding to stay open and working. Defendants had to attest that the funds were used up and they were used exclusively on *authorized* purposes. They lied on these documents and application also in order to receive partial forgiveness.

13.    <u>Defendant's False Statements and Fraud</u>. Defendants knowingly and intentionally made many material false statements to the government and bank to obtain the loans.

---

[4] High Density (80 – 150 square feet per employee): Majority open seating with rows of small desks. May have a few private offices. Often seen in companies that house many different teams within the same space, as well as for sales, technology, coworking or customer support offices.
Average Density (150 – 250 square feet per employee): Mix of open cube or desk space and private offices. Traditional office layout.
Spacious (250 – 500 square feet per employee): Majority of the space consisting of large private offices. Historically seen in law firms. https://aquilacommercial.com/learning-center/how-much-office-space-need-calculator-per-person/#:~:text=To%20estimate%20how%20much%20space,x%20250%20sf%2Femployee).

14.     Defendants did in fact receive the loans. *The Defendants have not returned the loan proceeds*.

15.     Defendant used the loan for unauthorized purposes.

16.     Defendant then sought and obtained loan forgiveness. They could not have complied with the requirements of forgiveness given their business type, assuming the CEO/owner did not simply pocket the money.

17.     Defendants' communication of false statements constitutes Wire Fraud pursuant to 18 U.S.C. Section 1343, which occurred when Defendants used "the wires" (this includes using the internet or the phone) to steal money by making false statements or promises.

18.     Defendant's communication of false statements also constitutes Bank Fraud (18 U.S.C. Section 1344) – by making false statements to a bank or other financial institution.

19.     Defendants communicated in writing, deceptive statements, including without limitation, with respect to the eligibility of the company obtaining the loans, economic necessity of the loan, the intended purpose of the loan, and the actual use of the proceeds, among others.

20.     Plaintiff-Relator, Relator LLC on behalf of the United States of America brings this action to recover treble damages, civil penalties, and costs under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-33, and to recover

damages and other monetary relief under the common law and equitable theories of unjust enrichment and payment by mistake.

21.     This action arises from numerous false statements and claims that the Defendants knowingly presented to the United States and the United States Small Business Administration ("SBA") and lenders acting on the SBA's behalf, in violation of the FCA and common law.

22.     The Defendants unlawfully obtained millions of dollars of PPP Proceeds (as defined below), and failed to return or repay the money. In fact, they went further and obtained total loan forgiveness. The US taxpayer unfairly subsidized their profitable business, while deserving small businesses found they could not longer get loans because of businesses like GEM which drained the program.

23.     In summary, GEM took advantage of the pandemic to embezzle millions of dollars from the government. They raided the PPP. They gouged the US taxpayers. They deceptively completed the SBA loan applications by seeking money for a business which they knew is INELIGIBLE to receive even 1 dollar of PPP loans, because it itself is a lender. The industry in which GEM belongs is expressly *prohibited* from receiving SBA loans generally and the PPP loan as well. GEM has loan operations in many states in the country. They are a sprawling business. They have ample reservoirs of cash on hand, more than enough to pay

their workers. <u>Defendant's stock in trade is money</u>. Not only was the loan impermissible, but they obtained forgiveness. The loan was made only because the government relied on the many false statements made by Defendants. GEM, and its CEO/owner <u>knew full well</u> that they were making many false statements to the government and SBA. They knew full well that their active pursuit in seeking out this money was illegal, but they persisted and kept the money.

## I.  THE PARTIES

24.    Plaintiff-Relator LLC, is a California limited liability company with its principal place of business in Los Angeles, California.

25.    Defendant Howard D. Kootstra, is an individual and, at all relevant times herein, is and was the Chief Executive Officer and Founder of Golden Empire Mortgage, Inc.

26.    Defendant Golden Empire Mortgage, Inc. is a California Corporation formed on July 17, 1987, with its principal place of 1200 Discovery Drive, Suite 300, Bakersfield, California 95833.

27.    GEM is a mortgage lender which directly provides money to people for home purchases.

28.    During round 1 of the paycheck protection program, Defendants applied for a PPP loan for **$6,415,482.00.** It was approved on April 10, 2020 by the SBA for the full amount, which was disbursed. The loan was facilitated by Tri Counties Bank. Defendant received 100% of the approved amount. On its

application for this loan, Defendant stated that it had 489 employees for which it needed the loan.

**The CARES Act and Paycheck Protection Program**

29.     On March 27, 2020, the Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act" or "the Act") (Pub. L. 116-136) became law and provided emergency assistance and health care response for individuals, families, and businesses affected by the coronavirus pandemic. SBA received funding and authority through the Act to modify existing loan programs and establish a new loan program to assist small businesses nationwide adversely impacted by the COVID-19 emergency.

30.     The CARES Act authorized loans to eligible small businesses struggling to pay employees and other business expenses as a result of the devastating effect of the COVID-19 pandemic.

31.     Section 1102 of the CARES Act temporarily permitted the SBA to guarantee 100 percent of 7(a) loans under a new program titled the "Paycheck Protection Program" ("PPP").

32.     On April 24, 2020, the Paycheck Protection Program and Health Care Enhancement Act (Pub. L. 116-139) became law and provided additional funding and authority for the PPP. On June 5, 2020, the Paycheck Protection Program Flexibility Act of 2020 (Flexibility Act) (Pub. L. 116-142) became law and changed

key provisions of the Paycheck Protection Program, including provisions relating to the maturity of PPP loans, the deferral of PPP loan payments, and the forgiveness of PPP loans.

33.    Under the PPP, in 2020, eligible businesses could obtain one SBA guaranteed PPP loan. Businesses were required to spend loan proceeds for employee compensation, rent or mortgage, and other specified expenses and, depending on their use of the loan proceeds, could qualify for loan forgiveness, up to the full amount of the loan.

34.    The SBA delegated authority to third-party lenders to underwrite and approve the PPP loans. In order to obtain a PPP loan, a qualifying business (through its authorized representative) signed and submitted a PPP loan application (SBA Form 2483) online through the lender's application platform. The PPP loan application (SBA Form 2483) required the business (through its authorized representative) to acknowledge the PPP program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan.

35.    Once the Borrower submitted its PPP loan application (SBA Form 2483) to a Lender, the participating lender processed the PPP loan application. If a PPP loan application (SBA Form 2483) was approved by the participating lender, it thereafter funded the PPP loan using its own monies, which were 100% guaranteed by the SBA.

36.     After the Lender processed and approved a borrower's PPP loan application (Form 2483), but prior to the closing of the PPP loan, the Lender submitted to the SBA, the Lender's Application - Paycheck Protection Program Loan Guaranty (SBA Form 2484) to the SBA applying for a guarantee on the loan. For a PPP loan to be approved, the Lender was required to Answer Yes to the following questions in the Lender's Application - Paycheck Protection Program Loan Guaranty (SBA Form 2484) as to the Borrower's certification of its General Eligibility to receive a PPP Loan:

| | | | |
|---|---|---|---|
| • | The Applicant has certified to the Lender that (1) it was in operation on February 15, 2020, has not permanently closed, and was either an eligible self-employed individual, independent contractor, or sole proprietorship with no employees or had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099MISC; (2) current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant; (3) the funds will be used to retain workers and maintain payroll, or make payments for mortgage interest, rent, utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures; and (4) the Applicant has not and will not receive another loan under the Paycheck Protection Program, section 7(a)(36) of the Small Business Act (15 U.S.C. 636(a)(36) (this does not include Paycheck Protection Program second draw loans, section 7(a)(37) of the Small Business Act (15 U.S.C. 636(a)(37)). | ☐ Yes | ☐ No |

SBA Form 2484 (emphasis added). Therefore, if a PPP borrower lied on its PPP loan application (SBA Form 2483), the PPP borrower's false certification caused the Lender to submit to the SBA with respect to that PPP Loan, a Lender's Application - Paycheck Protection Program Loan Guaranty (SBA Form 2484) that contained the PPP borrower's False Statement.

37.    SBA Form 2483 provides the following certification, among others  "I have read the statements included in this form, including the Statements Required by Law and Executive Orders, and I understand them" (hereafter the "Understanding Certification").

38.    SBA Form 2483 provides the following certification, among others "The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) implementing the Paycheck Protection Program under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) (the Paycheck Protection Program Rule)" (hereafter the "Eligibility Certification").

39.    SBA Form 2483 provides the following certification, among others "All SBA loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rule" (hereafter the "Use of Proceeds Certification")

40.     SBA Form 2483 additionally provides the following certification, among others: "Current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant" (hereafter the "Economic Necessity Certification").

41.     SBA Form 2483 additionally provides the following certification, among others: "The funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the Paycheck Protection Program Rule; I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud" (hereafter the "Worker Retention and Payroll Certification.")

42.     SBA Form 2483 additionally provides the following certification, among others: "During the period beginning on February 15, 2020 and ending on December 31, 2020, the Applicant has not and will not receive another loan under the Paycheck Protection Program." (hereafter the "Single Loan Certification.")

43.     SBA Form 2483 additionally provides the following certification, among others: "I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18

USC 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 USC 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000" (hereafter the "No False Statements Certification").

44.    After the borrower submitted the PPP loan application, that application was then processed by a participating lender. If a PPP loan application was approved, the participating lender funded the loan using its own monies, which were then guaranteed by the SBA. Generally, in the event that the borrower defaulted on a PPP loan, the SBA would purchase the borrower's debt from the lending financial institution and take on the responsibility for paying back the loan.

45.    Under the applicable PPP rules and guidance, recipients of PPP loans could apply to have the interest and principal on the PPP loan fully forgiven, meaning that the borrower would owe nothing and would have no obligation to repay the PPP loan. To obtain full forgiveness of the PPP loan, borrowers had to attest that they had "not reduced the number of employees or the average paid hours of [their] employees" during the loan period, that the loan proceeds had been spent on payroll costs and other permitted expenses and that at least 60% of the loan proceeds had been spent on payroll costs (hereafter the "Loan Forgiveness

Certification").

46.     Loans could only be used for certain permitted expenses, such as to fund payroll costs and employee benefits, such as health insurance, to pay for, mortgage interest, rent, utilities or worker protection costs related to COVID19.

47.     13 CFR§ 120.110 provides a list of what type of business are INELIGIBLE for SBA loans. This list includes <u>lenders</u> like Defendant …

**"(b) Financial businesses primarily engaged in the business of lending, such as banks, finance companies, and factors (pawn shops, although engaged in lending, may qualify in some circumstances)"**

48.     On April 2, 2020, the SBA posted the First PPP Interim Final Rule announcing the implementation of the CARES Act. SBA posted additional interim final rules on April 3, 2020, and April 14, 2020. On April 28, 2020, SBA posted an interim final rule supplementing the previously posted interim final rules with additional guidance. See, Federal Register / Vol. 85, No. 82 / Tuesday, April 28, 2020 / Rules and Regulations at, 23450-52, available at https://home.treasury.gov/system/files/136/Interim-Final-Rule-on-Requirements-for-Promissory-Notes-Authorizations-Affiliation-and-Eligibility.pdf. This interim final rule supplemented previous regulations and guidance on several important, discrete issues. The April 28, 2020, Interim Final Rule was immediately effective without advance notice and public comment because section 1114 of the CARES

Act authorized SBA to issue regulations to implement Title I of the CARES Act without regard to notice requirements. *Id.*

49.     With respect to the PPP, the January 6, 2021, Interim Final Rule provided Clarification Regarding Eligible Businesses, specifically 13 CFR Parts 113, 120 and 121.

*"Are businesses that are generally ineligible for 7(a) loans under 13 CFR*

*120.110 eligible for a PPP loan?*

**Paragraphs (a), (g), and (k), of 13 C.F.R. 120.110 do not apply to PPP loans. For PPP loans, the ineligibility restriction in 13 C.F.R. 120.110(n) is superseded by subsection B.2.a.iii. of this interim final rule. Otherwise, a business is not eligible for a PPP loan if it is a type of business concern (or would be, if the entity were a business concern) described in 13 C.F.R. 120.110, except as permitted by subsections B.1.d and B.1.g of this rule or otherwise permitted by PPP rules. Businesses that are not generally eligible for a 7(a) loan under 13 C.F.R. 120.110 are described further in SBA's Standard Operating Procedure (SOP) 50 10 6, Part 2, Section A, Chapter**

50.     The SBA's Standard Operating Procedure (SOP) 50 10 6, Part 2, Section A, Chapter states as follows:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CHAPTER 3: INELIGIBLE BUSINESSES**

A. **TYPES OF INELIGIBLE BUSINESSES**

The SBA Lender must determine whether the Applicant is one of the types of businesses listed as ineligible in SBA regulations (13 CFR § 120.110). Certain business types appearing on this list may be eligible under limited circumstances, as discussed below.

1. Businesses organized as non-profit businesses are ineligible (for-profit subsidiaries may be eligible). 13 CFR § 120.110 (a)

2. Businesses Engaged in Lending 13 CFR § 120.110 (b).

   a. SBA cannot guarantee a loan that provides funds to businesses primarily engaged in lending, investment, or to an otherwise eligible business engaged in financing, factoring, or investment not related or essential to the business. This prohibits SBA Loans to:

      i. Banks;

      ii. Life Insurance Companies (but not independent agents);

      iii. Finance Companies;

      iv. Factoring Companies;

      v. Investment Companies;

      vi. Bail Bond Companies; and

      vii. Other businesses whose stock in trade is money.

   b. The limited circumstances under which certain businesses engaged in lending may be eligible are as follows:

      i. A pawn shop that provides financing is eligible if more than 50% of its revenue for the previous year was from the sale of merchandise rather than from interest on loans.

      ii. A business that provides financing in the regular course of its business (such as a business that finances credit sales) is eligible, provided less than 50% of its revenue is from financing its sales.

      iii. A mortgage servicing company that disburses loans and sells them within 14 calendar days of loan closing is eligible. Mortgage companies primarily engaged in the business of servicing loans are eligible. Mortgage companies that make loans and hold them in their portfolio are not eligible.

      iv. A check cashing business is eligible if it receives more than 50% of its revenue from the service of cashing checks.

Effective October 1, 2020                                      Page 141

51.     GEM is a lender. They are expressly prohibited from receiving SBA loans, including PPP loans. GEM's CEO, Howard Kootstra, is a sophisticated businessman. He knows this. The legal and financial experts he has hired over the

19
COMPLAINT

years, would have known this. He broke these clear rules knowing full well what he doing.

52.     Defendant's certification was false because **they <u>are</u> the type of business/industry which is <u>prohibited</u> from SBA loans**: **The Defendants are lenders**.

53.     In addition to applying any applicable business type ineligibility rules, all borrowers should carefully review the required certification on the Paycheck Protection Program Borrower Application Form (SBA Form 2483) stating that ''[c]urrent economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant.''

54.     GEM is obviously not allowed to take a PPP loans because it is lucrative money lending business. GEM gouged the American public. It took advantage of every aspect of the PPP program, maximizing the amount of the loan and then loan forgiveness. The CEO is a seasoned and cunning businessman, well versed in the laws regulating the lending industry. Discovery will reveal where the millions in PPP funds were actually spent, but what is obvious is that GEM *did not need any money from US taxpayers*. This business was lending other people money. Public sources reveal that GEM is and was highly profitable, during the pandemic, just like most in mortgage lending industry. GEM did not suffer any business loss and certainly had the money to pay its own worker's wages. GEM**'s** "stock in

trade" is money and business was booming. GEM simply ripped off the PPP

program and had the US taxpayers subsidize their business, at best, and subsidize

Howard Kootstra's ultra luxury life style, at worst.

## II.   Defendants' False Statements and Misuse of Proceeds

55.   Defendants applied for and received the PPP Loans in the total amount

of **$6,415,482.00**. In order to receive the loan, Defendants would have to have

completed SBA Form 2483 entitled "Borrower Application Form". In doing so,

Defendants intentionally made materially false statements with respect to the

Eligibility Certification, the Use of Proceeds Certification, the Economic Necessity

Certification, the Worker Retention and Payroll Certification, the No False

Statements Certification and the Single Loan Certification.

56.   Defendants signed the loan applications, thereby endorsing the

Understanding Certification, which means that they agreed that they understood the

rules and guidelines of the PPP, including, without limitation the rules regarding

use of proceeds and the certifications made.

57.   The proceeds of the PPP Loan were not and could not have been used

only for authorized purposes consistent with the Paycheck Protection Program

Rule, because, among other things, the Defendants were obviously not allowed to

take PPP loans because of their industry type - money lenders. Therefore when

Defendants made the Use of Proceeds Certification, the certification was false.

58.   The PPP loan money was only allowed to be used on authorized

expenses. The proceeds of the PPP Loan were not permitted to be used to pay business costs for a business in the lending industry, therefore when Defendant made the Worker Retention and Payroll Certification, the certification was false.

59.     The Defendants actively pursued and obtained loan forgiveness. As a mortgage lender, GEM is prohibited from obtaining any PPP loans, therefore any expenditures using PPP loan money was not authorized. In their forgiveness application, Defendant's falsely reported that they spent 100% of the loan proceeds on eligible expenses. Therefore, they lied on this application and certification statements to obtain this forgiveness.

60.     On their loan applications, Defendant intentionally made many key statements which were obviously false and intended to deceive. These key false statements by Defendant made it possible for them to get the loans and get them written off with forgiveness.

61.     By virtue of the above false statements, when Defendants made the No False Statements Certification, that certification was false.

### III.   THE FALSE CLAIMS ACT

62.     Plaintiff alleges that, from at least April 28, 2020 through the time of the filing of this Complaint, Defendants violated the FCA by "knowingly" submitting and/or causing the submission of false claims for payment to lenders authorized by the SBA to process PPP loan applications in the form of PPP Applications and the resulting receipt and failure to return PPP loans. These claims for payment were false because Defendants: (1) made knowingly false statements

and certifications in their PPP applications, and in certifications accompanying its receipt of federal PPP funds, that it was complying with, and would continue to comply with, applicable laws and regulations governing the award of PPP loans; and/or (2) made, or caused to be made, false representations in loan applications that the Defendants were eligible to receive such PPP loans. Moreover, Defendants' false claims caused the bank that their used to facilitate the loan on numerous occasions submit to the SBA, a Lender's Application - Paycheck Protection Program Loan Guaranty (SBA Form 2484) that contained Defendants' false statement concerning Defendants' general eligibility for the PPP loans, on which the SBA relied and paid to the lenders. The bank relied on these false statements and passed them along to the government.

63.     The False Claims Act prohibits fraudulent conduct in connection with federal programs, including the knowing submission of false claims for payment to the government. See 31 U.S.C. § 3729(a)(1)(A). In these circumstances, liability may attach if the omission renders those representations misleading. 41. 31 U.S.C. § 3729(a)(1)(A) and (B) of the FCA provide that:

(1) . . . any person who—

(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; [or]

(B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim,

. . .

(G) knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or

decreases an obligation to pay or transmit money or property to the Government, is liable to the United States Government . . .

    31 U.S.C. § 3729(a)(1)(A), (B), and (G) (2020).

    42. The scope of a false or fraudulent claim is to be broadly construed. As used in the FCA, a "claim"

    (A) means any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that—

    (i) is presented to an officer, employee, or agent of the United States; or

    (ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government—

(I) provides or has provided any portion of the money or property requested or demanded; or

    (II) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded; . . .

31 U.S.C. § 3729(b)(2) (2020).

   64. A person who violates the False Claims Act during the time period at issue "is liable for a civil penalty as adjusted, plus 3 times the amount of damages which the United States Government sustains because of the act of that person." 31 U.S.C. § 3729(a). See 28 C.F.R. § 85.3(a)(9); Department of Justice, 28 CFR Part 85, Civil Monetary Penalties Inflation Adjustments for 2022 published at: https://www.govinfo.gov/content/pkg/FR-2022-05-09/pdf/2022-09928.pdf.

### IV. JURISDICTION & VENUE

65.     This Court has subject matter jurisdiction over the Plaintiff's claims brought under the FCA, 31 U.S.C. §§ 3279, et seq., pursuant to 31 U.S.C. §§ 3730 and 3732. This Court has supplemental jurisdiction to entertain the common law and equitable causes of action under 28 U.S.C. § 1367(a).

66.     Plaintiff The United States of America is also located in the Eastern District of California, Kern County. This Court has personal jurisdiction over Defendants pursuant to 31 U.S.C. § 3732(a) because at all times material hereto, Defendants transacted business and are located in the Eastern District of California, and acts proscribed by 31 U.S.C. § 3729 occurred in this district.[5]

67.     Venue is proper in this district pursuant to 31 U.S.C. § 3732(a), and under 28 U.S.C. §§ 1391(b) and 1395(a), because the Defendant's acts that form the basis of this Complaint occurred in the Eastern District of California, Kern County.

68.     Relator's claims and this Complaint are not based upon prior public disclosures of allegations or transactions in a federal criminal, civil, or administrative hearing in which the Government or its agent is a party; in a congressional, Government Accountability Office, or other federal report, hearing, audit, or investigation; or from the news media. To the extent that there has been a public disclosure unknown to Relator, it is the "original source" within the meaning of 31 U.S.C. § 3730(e)(4)(B) and/or the public disclosure is a result of Relator

---

[5]GEM operates in California and is headquartered in California, close to the Eastern District. GEM has formed an operating entity in California and transacts business in California.

voluntarily providing this information to the United States Government prior to filing this *qui tam* action.

## V.   FIRST CAUSE OF ACTION

### FALSE OR FRAUDULENT CLAIMS (31 U.S.C. § 3729.(a)(1)(A-B))

69.    Plaintiff alleges and incorporates by reference each and every allegation contained in all prior paragraphs of this complaint.

70.    This is a claim for treble damages and penalties under the False Claims Act, 31 U.S.C. § 3729, *et seq*., as amended.

71.    By virtue of the acts described above, Defendants knowingly presented, or caused to be presented, to an officer or employee of the United States government, false or fraudulent claims for payment or approval, in violation of the FCA, 31 U.S.C. § 3729(a)(l)(A).

72.    By virtue of the acts described above, Defendants knowingly made or used, or caused to be made or used, false or fraudulent records or statements material to false or fraudulent claims for payment by the Government.

73.    Because of the Defendants' acts, the United States sustained damages in an amount to be determined at trial and, therefore, is entitled to treble damages under the FCA, plus civil penalties of not less than $12,537.00 and not more than $25,076.00 for each and every violation arising from Defendants' unlawful conduct alleged herein.

# VIII. CONCLUSION

74.     The PPP is meant for small businesses, not million-dollar lenders who do not need the money. The PPP was meant to give small businesses and working Americans a fighting chance, so they did not have to close shop forever. The PPP was not meant as a free-for-all for rich and cunning businessmen to have the US taxpayers subsidize their luxury life styles. The Defendants used the PPP to raid the public purse, to ravage government coffers. They helped themselves, while so many were helping others. The Defendants defrauded the Federal government and US taxpayers, misappropriating millions of dollars intended to help needful working Americans at a time of national emergency. Now that program is dry. The American people have a right to be angry.

//

//

//

//

//

//

//

//

//

COMPLAINT

## **PRAYER FOR RELIEF**

WHEREFORE, *qui tam* Plaintiff/Relator prays for judgment against Defendants, as follows:

1.  That this Court enter judgment against each Defendant in an amount equal to three times the damages that the United States has sustained because of Defendants' action, plus a civil penalty of not less than $12,537.00 and not more than $25,076.00 for each and every false claim as are required by law, together with all such further relief as may be just and proper.

2.  Such other relief as this Court may deem just and proper, together with interest and costs of this action.

3.  Reasonable attorney fees, litigation expenses, and costs of suit

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.


Dated: July 20, 2022                    THE LAW OFFICE OF HAKIMI & SHAHRIARI


                              By:    /s/ Peter Shahriari
                                     PETER SHAHRIARI, ESQ.
                                     Attorney for Plaintiff

COMPLAINT