R. David Jacobs (SBN 73545)
EPSTEIN BECKER & GREEN, P.C.
1925 Century Park East, Suite 500
Los Angeles, California 90067-2506
Telephone: 310.557.9517
Facsimile: 310.553.2165
DJacobs@ebglaw.com

George B. Breen (*pro hac vice* motion pending)
Daniel C. Fundakowski (*pro hac vice* motion pending)
EPSTEIN BECKER & GREEN, P.C.
1227 25th Street, NW, Suite 700
Washington, DC 20037
Telephone: 202.861.1823
Facsimile: 202.861.3523
GBreen@ebglaw.com
DFundakowski@ebglaw.com

*Attorneys for Defendants*
*Golden Empire Mortgage, Inc. &*
*Howard D. Kootstra*

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* RELATOR, LLC,<br><br>Plaintiff,<br><br>v.<br><br>GOLDEN EMPIRE MORTGAGE, INC., a corporation, HOWARD D. KOOTSTRA, an individual, and DOES 1-10,<br><br>Defendants. | Case No: 1:22-CV-924-NODJ-CDB<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**<br><br>Hearing Date: March 25, 2024<br>Judge: NODJ<br>Complaint Filed: July 26, 2022<br><br>**ORAL ARGUMENT REQUESTED** |

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ........ ii

PRELIMINARY STATEMENT ........ 1

FACTUAL AND PROCEDURAL BACKGROUND ........ 4

PLEADING STANDARDS ........ 5

ARGUMENT ........ 7

I. Relator's Claims are Barred by the FCA's Public Disclosure Bar ........ 7

A. The Complaint is Based Entirely on Public Information ........ 8

B. Relator is Not an "Original Source" of the Public Disclosure ........ 10

II. Relator is Incorrect that Mortgage Lenders are Ineligible for PPP Loans ........ 12

III. Relator Provides No Plausible Basis for Challenging Golden Empire's Reported Number of Jobs ........ 13

IV. Relator Fails to Allege Scienter as Required by the FCA ........ 14

V. Relator Fails to State a Claim Against Howard Kootstra ........ 14

CONCLUSION ........ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A-1 Ambulance Serv., Inc. v. California*,
202 F.3d 1238 (9th Cir. 2000)........................................................................... 10

*Amphastar Pharms. Inc. v. Aventis Pharma SA*,
856 F.3d 696 (9th Cir. 2017)............................................................................. 11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................... 5, 6, 15

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................................... 5, 6, 11

*Bly-Magee v. California*,
236 F.3d 1014 (9th Cir. 2001)............................................................................. 6

*United States ex rel. Calva v. Impac Secured Assets Corp.*,
2018 WL 6016152 (C.D. Cal. June 12, 2018) ........................................................ 8

*In re Century Aluminum Co. Sec. Litig.*,
729 F.3d 1104 (9th Cir. 2013).................................................................... 6, 12

*United States ex rel. Durkin v. County of San Diego*,
300 F. Supp. 3d 1107 (S.D. Cal. 2018) ............................................................... 14

*California ex rel. Grayson v. Pac Bell Tel. Co.*,
48 Cal. Rptr. 3d 427 (Cal. Ct. App. 2006) ............................................................ 1

*U.S. ex rel. Hendow v. Univ. of Phx.*,
461 F.3d 1166 (9th Cir. 2006)............................................................................. 7

*United States ex rel. Hong v. Newport Sensors, Inc.*,
2016 WL 8929246 (C.D. Cal. May 19, 2016) ......................................................... 9

*Lesnik v. Eisenmann SE*,
374 F. Supp. 3d 923 (N.D. Cal. 2019) .................................................................. 7

*Malhotra v. Steinberg*,
770 F.3d 853 (9th Cir. 2014)............................................................................. 11

*United States ex rel. Mateski v. Raytheon Co.*,
816 F.3d 565 (9th Cir. 2016)........................................................... 7, 8, 10, 12

*United States ex rel. Osheroff v. Humana Inc.*,
776 F.3d 805 (11th Cir. 2015) ... 9

*United States ex rel. Relator, LLC v. Dayhoff et al.*,
Case No. 23-CV-60292 (S.D. Fla.) ... 1

*United States ex rel. Rosner v. WB/Stellar IP Owner, L.L.C.*,
739 F. Supp. 2d 396 (S.D.N.Y. 2010) ... 9

*Schindler Elevator Corp. v. United States ex rel. Kirk*,
563 U.S. 401 (2011) ... 8

*Silbersher v. Valeant Pharms. Int'l, Inc.*,
89 F.4th 1154 (9th Cir. 2024) ... 8, 10

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001) ... 5

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007) ... 6

*United States v. Corinthian Colleges*,
655 F.3d 984 (9th Cir. 2011) ... 5

*United States v. United Healthcare Ins. Co.*,
848 F.3d 1161 (9th Cir. 2016) ... 6

*United States v. Villaspring Health Care Ctr., Inc.*,
3:11-CV-43, 2011 WL 6337455 (E.D. Ky. Dec. 19, 2011) ... 15

**Statutes**

31 U.S.C. § 3729(b)(1)(A)(i)-(iii) ... 14

31 U.S.C. § 3730(c)(2)(A) ... 1

31 U.S.C. § 3730(e)(4) ... 2

31 U.S.C. § 3730(e)(4)(A) ... 7, 10, 11

31 U.S.C. § 3730(e)(4)(A)–(B) ... 8

31 U.S.C. § 3730(e)(4)(A)(ii) ... 8

31 U.S.C. § 3730(e)(4)(A)(iii) ... 9

31 U.S.C. § 3730(e)(4)(B)(i) ... 11

31 U.S.C. § 3730(e)(4)(B)(ii) ... 11

False Claims Act, 31 U.S.C. § 3729 ........ *passim*

**Other Authorities**

Fed. R. Civ. P. 8(a) ........ 2, 3

Fed. R. Civ. P. 9(b) ........ *passim*

Fed. R. Civ. P. 12(b)(6) ........ 6

Defendants Golden Empire Mortgage, Inc. ("Golden Empire") and Howard Kootstra ("Kootstra") (collectively, "Defendants") hereby submit the following Memorandum of Points and Authorities in Support of their Motion to Dismiss the Complaint ("Complaint") filed by Relator, Relator LLC ("Relator").

**PRELIMINARY STATEMENT**

Golden Empire has been in business for over 30 years as a respected lender in the mortgage industry. Relator, a serial plaintiff, is a limited liability company that has recently filed lawsuits across the country alleging violations of the False Claims Act, 31 U.S.C. § 3729 ("FCA"), in connection with COVID-19 relief programs, including other lawsuits premised on alleged noncompliance with the Paycheck Protection Program ("PPP") administered by the U.S. Small Business Administration ("SBA")."[1] Courts in California have recognized that FCA lawsuits brought by third-party outsiders, like Relator, that have no independent information to contribute pose a serious potential for abuse:

> *[Q]ui tam* actions . . . present the danger of parasitic exploitation of the public coffers by opportunistic plaintiffs who have no significant information to contribute of their own. Providing cash bounties to freeloaders does not serve the purpose of the FCA to protect the public fisc.

*California ex rel. Grayson v. Pac Bell Tel. Co.*, 48 Cal. Rptr. 3d 427, 430 (Cal. Ct. App. 2006) (internal quotation marks and citation omitted).

Relator alleges that Golden Empire violated the FCA in two ways: (1) Golden Empire was categorically ineligible for a PPP loan because it is a mortgage lender and therefore any statements or certifications that it was eligible for PPP funds were false; and (2) Golden Empire's reported 489 employees on its PPP application was an "inflated" number and therefore any statements or certifications as to the accuracy of that figure on its PPP application were false. Dkt. No. 1, Complaint, at ¶¶ 4, 11. Both claims fail because they are barred by the FCA's public disclosure bar and, further, because the allegations supporting these claims cannot meet either the plausibility

[1] The United States has repeatedly declined to intervene in actions brought by Relator and, in fact, the United States recently invoked its dismissal authority in one such case pursuant to 31 U.S.C. § 3730(c)(2)(A). *See United States ex rel. Relator LLC v. Dayhoff, et al.*, Case No. 23-CV-60292 (S.D. Fla.), Dkt. No. 22.

pleading standard of Fed. R. Civ. P. 8(a) or the heightened pleading standard of Fed. R. Civ. P. 9(b). The Complaint should therefore be dismissed in its entirety with prejudice.

This is precisely the type of parasitic lawsuit that the public disclosure bar is intended to prohibit. The public disclosure bar prohibits relators from bringing FCA claims when “substantially the same” conduct alleged has already been “publicly disclosed.” *See* 31 U.S.C. § 3730(e)(4). A primary purpose of the public disclosure bar is to weed out FCA claims, like those in the Complaint, which are not based on genuine whistleblower information. All of the material information upon which Relator relies in alleging violations of the FCA is readily ascertainable from the PandemicOversight.gov database, an official website maintained and curated by the United States government that is available to everyone. For instance, the database contains information on Golden Empire’s PPP lender (Tri Counties Bank), the loan amount ($6,415,482), date the loan amount was approved (April 10, 2020), the loan amount forgiven ($6,541,682), date the loan amount was forgiven (April 7, 2022), number of jobs reported (489), loan number (2478357101), purpose of the loan (payroll), among other information. The material facts in Complaint mirror, and are necessarily limited to, this public information available in the PandemicOversight.gov database. The Complaint also conclusively establishes that Relator is not an original source; Relator has no independent knowledge of the information alleged in the Complaint beyond what is publicly sourced. Because this defect cannot be cured with an amended pleading, the Complaint should be dismissed with prejudice.

Relator’s allegations additionally fail to meet either the plausibility pleading standard of Fed. R. Civ. P. 8(a) or the heightened pleading standard of Fed. R. Civ. P. 9(b). Relator’s fundamental premise for this lawsuit, that mortgage companies are categorically ineligible for PPP loans, is incorrect. Complaint ¶ 1. As noted in Paragraph 50 of the Complaint, there are circumstances “under which certain businesses engaged in lending may be eligible” for PPP loans, including mortgage servicing companies that disburse and sell loans within 14 calendar days of closing. Complaint ¶ 50. Relator has not, and cannot, allege that Golden Empire does not qualify as a mortgage servicing company under the PPP rules. This alone is a sufficient basis for

dismissing the Complaint. Moreover, while the Complaint alleges in conclusory fashion that "the company falsely reported to the SBA that it was permitted to take the loans even though SBA has clear rules prohibiting loans to lenders," it contains no allegations, nor any facts to support same, that Golden Empire falsely reported anything to the SBA. Complaint ¶ 8. By contrast, the Complaint concedes that Golden Empire was forthright in disclosing its status as a mortgage lender on its PPP application and reported "NAICS code 522292" when applying for the loan, which is the code for "lending companies that use real estate as collateral." Complaint ¶ 8.

Relator's claim that Golden Empire reporting 489 employees on its PPP application violated the FCA is similarly unfounded and fails to meet the pleading requirements of Fed. R. Civ. P. 8(a) or the heightened pleading standard of Fed. R. Civ. P. 9(b). Relator's allegation that Golden Empire's reported number of jobs "cannot be correct" is based on nothing other than Relator's speculation, relying on law firm office density metrics Relator pulled from the Internet, that 489 employees could not fit within Golden Empire's corporate office. Complaint ¶ 11. The Complaint contains no particularized allegations on the number of employees that work in other states or offices other than Golden Empire's corporate office. The Complaint also does not address, much less allege with particularity, that Golden Empire's documentation supporting its count of 489 employees, which all PPP borrowers were required to provide to their lender in connection with the loan application, was falsified or otherwise inaccurate. The Complaint similarly fails to allege how the reported number of employees was false under each of the three calculation methods that the SBA permitted PPP borrowers to utilize. Each of these deficiencies confers a separate, sufficient basis for dismissing the Complaint.

The Complaint also fails to allege scienter as required by the FCA, instead relying only on formulaic and generalized allegations that Golden Empire was "sophisticated" or "knew full well" that the alleged conduct was prohibited. Complaint ¶ 9. Relator cannot merely allege knowledge as to the existence of regulatory requirements, but must instead allege knowledge as to the *false claim itself*. Nowhere in the Complaint does Relator allege facts to show that any specific individuals knowingly provided false information on Golden Empire's PPP application.

While the Complaint identifies Golden Empire's CEO, Howard Kootstra, as an individual defendant, it does not allege a single fact to support the allegation that Mr. Kootstra presented, or caused to be presented, the submission of any false claim in his individual capacity. Even where an allegation as to Mr. Kootstra could theoretically be assumed from a collective reference to Golden Empire as an entity, such threadbare recitals of a cause of action's elements, supported by mere conclusory statements, are insufficient to state a claim against Mr. Kootstra individually.[2]

For these and the reasons set forth below, the Complaint should be dismissed in its entirety with prejudice.

## FACTUAL AND PROCEDURAL BACKGROUND

On April 6, 2020, the SBA issued guidance to PPP borrowers in the form of answers to "Frequently Asked Questions." Fundakowski Decl., Ex. 1. Question 14 addressed: "What time period should borrowers use to determine their number of employees and payroll costs to calculate their maximum loan amounts?" *Id.* at 5. In answering that question, the SBA explained that borrowers could use any of three separate methods to count employees. Specifically, borrowers were permitted to calculate "their average employment" utilizing data "either [1] from the previous 12 months or [2] from calendar year 2019." *Id.* at 6. The SBA also permitted a third method: "[3] Alternatively, borrowers may elect to use SBA's usual calculation: the average number of employees per pay period in the 12 completed calendar months prior to the date of the loan application (or the average number of employees for each of the pay periods that the business has been operational, if it has not been operational for 12 months)." *Id.*

Publicly available information reflects that, on April 10, 2020, Golden Empire's PPP loan was approved in the amount of $6,415,482 and that loan was facilitated by Tri Counties Bank.

---

[2] Aside from Relator's allegations being implausible on their face, the allegations are further discredited by the fact that the United States "diligently investigated the substantive claims alleged by the relator" for over eight months, which included interviewing both members of Relator LLC, subpoenaing and reviewing records from the bank that made the PPP loan at issue, and working closely with counsel for the SBA, the agency tasked with administering the PPP. *See* Dkt. No. 10-1, Declaration of AUSA Steven Tennyson, at 1-2; Dkt. No. 15, United States' Response to Show Cause Order, at 2. Following that thorough investigation of Relator's claims, the United States declined to intervene on October 13, 2023. *See* Dkt. No. 16, Notice of Declination. Also telling is the fact that Relator does not, and cannot, allege that Golden Empire ever received a subpoena, civil investigative demand, or other inquiry from the United States following the investigation of Relator's allegations, nor does Relator allege that Golden Empire ever received a request to repay any portion of the PPP loan following the investigation. This is because Relator's claims are meritless.

Complaint ¶ 28; Fundakowski Decl., Ex. 2. Similarly, Golden Empire reported 489 employees in applying for the PPP loan. *Id.* Golden Empire's PPP loan was forgiven, with interest, in the amount of $6,541,642, on April 7, 2022. Fundakowski Decl., Ex. 2.

Relator filed the Complaint under seal on July 26, 2022. Dkt. No. 1. Relator served the Complaint on the United States on August 8, 2022. Dkt. No. 10-1, Declaration of Steven Tennyson, at 1. The United States then thoroughly investigated the allegations for approximately eight months. *Id.* at 2. In connection with that investigation, the United States interviewed both members of Relator LLC, subpoenaed the bank that facilitated the loan (Tri Counties Bank), and obtained and reviewed the information that Golden Empire provided in connection with the PPP loan application. *Id.* The United States also coordinated closely with the SBA regarding the investigation. *Id.* After concluding its investigation, the United States declined to intervene on October 13, 2023. Dkt. No. 16, Notice of Declination.

## PLEADING STANDARDS

Relator is required to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 557. The plausibility standard is "not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Although a court must assume the truth of allegations of material fact, a court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Relator's FCA claims are subject to the heightened pleading requirement of Fed. R. Civ. P. 9(b) (with the exception of the scienter element, which can be plead generally). *United States v.*

*Corinthian Colleges*, 655 F.3d 984, 996 (9th Cir. 2011). Rule 9(b) provides that, in all averments of fraud, the circumstances constituting fraud must be stated with particularity. "To comply with Rule 9(b), allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (internal quotation marks and citation omitted). Accordingly, under Rule 9(b), Relator "must allege the who, what, when, where, and how of the misconduct charged, including what is false or misleading about a statement, and why it is false." *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016).

"When faced with two possible explanations, only one of which can be true and only one of which results in liability, plaintiffs cannot offer allegations that are 'merely consistent with' their favored explanation but are also consistent with the alternative explanation." *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). In that situation, "[s]omething more is needed, such as facts tending to exclude the possibility that the alternative explanation is true . . . in order to render plaintiffs' allegations plausible within the meaning of *Iqbal* and *Twombly*." *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d at 1108 (internal citations omitted). When a plaintiff fails to allege "something more," the "allegations remain stuck in neutral territory" and fail under Rule 12(b)(6). *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

At this stage, the Court "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).[3] The Court "need not accept as true allegations contradicted by judicially noticeable facts . . . and it may look beyond the plaintiff's complaint to matters of public record without converting the Rule 12(b)(6)

[3] Defendants are filing a Request for Judicial Notice concurrently with this Motion to Dismiss.

motion into a motion for summary judgment[.]" *Lesnik v. Eisenmann SE*, 374 F. Supp. 3d 923, 937 (N.D. Cal. 2019) (internal citations and quotation marks omitted).

To state an FCA claim, a relator must allege with particularity: "(1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due." *U.S. ex rel. Hendow v. Univ. of Phx.*, 461 F.3d 1166, 1174 (9th Cir. 2006).

**ARGUMENT**

**I. Relator's Claims are Barred by the FCA's Public Disclosure Bar**

The Complaint should be dismissed with prejudice because Relator's claims are barred by the FCA's public disclosure bar. Congress passed the FCA to incentivize relators with genuinely valuable insider information to come forward, but also sought to preclude recovery by "parasitic" plaintiffs "who have no significant information of their own to contribute." *United States ex rel. Mateski v. Raytheon Co.*, 816 F.3d 565, 577 (9th Cir. 2016). To strike that balance, Congress enacted a "public disclosure bar," which states that courts "shall" dismiss an action, unless opposed by the government, "if substantially the same allegations or transactions . . . were publicly disclosed" in specified sources before the action was filed, unless the relator is an "original source of the information." 31 U.S.C. § 3730(e)(4)(A). Specifically, the statute states:

> (A) The court shall dismiss an action or claim under this section, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed—
>
> > (i) in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party;
> >
> > (ii) in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or
> >
> > (iii) from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

> (B) For purposes of this paragraph, "original source" means an individual who either (i) prior to a public disclosure under subsection (e)(4)(a), has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based, or (2) who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action under this section.

31 U.S.C. § 3730(e)(4)(A)–(B). The public disclosure bar involves a two-step inquiry. *United States ex rel. Calva v. Impac Secured Assets Corp.*, 2018 WL 6016152, at *3 (C.D. Cal. June 12, 2018). "First, the Court must determine whether there was a prior public disclosure of the allegations or transactions underlying the *qui tam* suit through one of the enumerated sources." *Id.* (internal quotation marks omitted). An "allegation" refers to a prior "direct claim of fraud," whereas a "transaction" refers to the disclosure of "facts from which fraud can be inferred." *Silbersher v. Valeant Pharms. Int'l, Inc.*, 89 F.4th 1154, 1167 (9th Cir. 2024). The Supreme Court has observed that the public disclosure bar applies with a "broa[d] scope" to the source in which the disclosure occurs, and that the phrase "allegations or transactions" is "wide-reaching." *Schindler Elevator Corp. v. United States ex rel. Kirk*, 563 U.S. 401, 408 (2011). Second, "[i]f there has been a public disclosure, the Court must then determine whether the relator is an 'original source' within the meaning of the statute." *Id.* The Complaint fails under this analysis.

**A. <u>The Complaint is Based Entirely on Public Information</u>**

Determining whether there has been a public disclosure of the transactions underlying the lawsuit has three components—whether "(1) the disclosure at issue occurred through one of the channels specified in the statute; (2) the disclosure was public; and (3) the relator's action is substantially the same as the allegation or transaction publicly disclosed." *Silbersher*, 89 F.4th at 1163. In the Ninth Circuit, "for a relator's allegations to be based upon a prior public disclosure, the publicly disclosed facts need not be identical with, but only substantially similar to, the relator's allegations." *Mateski*, 816 F.3d at 573 (internal quotation marks and citation omitted).

The transactions in the Complaint were publicly disclosed through a federal report. *See* 31 U.S.C. § 3730(e)(4)(A)(ii). Every significant fact that Relator alleges is publicly available on

PandemicOversight.gov, an official website of the United States government. This website is maintained and curated by the Pandemic Response Accountability Committee ("PRAC") of the Council of the Inspectors General on Integrity and Efficiency, and the navigable database qualifies as a "report" for purposes of the public disclosure bar. *See United States ex rel. Rosner v. WB/Stellar IP Owner, LLC*, 739 F. Supp. 2d 396, 405, 407 (S.D.N.Y. 2010) (holding that a "database available on a government website" can qualify as a "report" under the public disclosure bar when "readily available," "free," and "easily navigable"). In the PandemicOversight.gov database, the result for "Golden Empire Mortgage, Inc." shows the following judicially noticeable information: (1) company name and address; (2) loan amount; (3) date loan was approved; (4) lender; (5) loan amount forgiven; (6) date loan amount forgiven; (7) number of jobs reported; (8) number of loans; (9) spending category; and (10) industry. *See* Fundakowski Decl., Ex. 2. This is precisely the factual information upon which the allegations in the Complaint are premised.

To the extent a public disclosure did not occur in a federal "report," the PandemicOversight.gov website can also readily qualify as "news media" under these circumstances. *See* 31 U.S.C. § 3730(e)(4)(A)(iii). Courts have repeatedly held that information available to the public on the Internet (particularly from government and journalistic sources that exist for the purpose of disseminating information) qualify as news media. *See United States ex rel. Hong v. Newport Sensors, Inc.*, 2016 WL 8929246, at *5 (C.D. Cal. May 19, 2016) ("Information publicly available on the Internet generally qualifies as news media") (internal quotation marks omitted) (citing *United States ex rel. Carter v. Bridgeport Educ., Inc.*, 2015 WL 4892259, at *6 n.4 (S.D. Cal. Aug. 17, 2015)); *see also United States ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 813 (11th Cir. 2015) (agreeing with string of cases holding that "publicly available websites, which are intended to disseminate information . . . qualify as news media for purposes of the public disclosure provision").

Relator's action is also "substantially similar" to the transactions that have already been disclosed on PandemicOversight.gov. In making this determination, the Ninth Circuit applies the "X + Y = Z" formula:

> [I]f X + Y = Z, Z represents the allegation of fraud and X and Y represent its essential elements. In order to disclose [a] fraudulent transaction publicly, the combination of X and Y must be revealed, from which readers or listeners may infer Z, *i.e.*, the conclusion that fraud has been committed.

*Silbersher*, 89 F.4th at 1167 (quoting *Mateski*, 816 F.3d at 571). "In the *Mateski* formula, the variables X and Y stand for the fundamental elements of fraud: a misrepresented state of facts and a true state of facts." *Id.* (internal quotation marks and citations omitted). If either side of the equation has been disclosed—"X+Y" (the transactions) or "Z" (the allegations)—the suit is barred. *Id.* The "transaction" prong of the public disclosure bar precludes suits when "the material elements of the allegedly fraudulent transaction are disclosed in the public domain." *A-1 Ambulance Serv., Inc. v. California*, 202 F.3d 1238, 1243 (9th Cir. 2000) (internal quotation marks and citation omitted). The public disclosure bar does not require "an explicit 'allegation' of fraud" in the prior disclosures. *Mateski*, 816 F.3d at 571 (quoting *Hagood v. Sonoma Cty. Water Agency*, 81 F.3d 1465, 1473 (9th Cir. 1996)). In other words, "[t]hat the disclosed transactions themselves may not have pointed directly to any wrongdoing is simply of no moment." *A-1 Ambulance*, 202 F.3d at 1245.

Finally, any doubt about the application of these principles must be resolved against allowing Relator's lawsuit to proceed, as the Ninth Circuit has directed that courts should "rea[d] the 'transactions' portion of [the public disclosure bar] inclusively," consistent with what the Supreme Court has described as the bar's "broad" reach. *Mateski*, 816 F.3d at 565 n.9 (quoting *Schindler*, 563 U.S. at 408). Applying this framework, "X" represents how Golden Empire applied for and received a PPP loan notwithstanding how it is a mortgage lender, and "Y" represents how mortgage lenders are (allegedly) categorically ineligible for PPP loans. These two variables that Relator relies on to attempt to establish "Z"—that fraud must have occurred—are public information.

**B. <u>Relator is Not an "Original Source" of the Public Disclosure</u>**

Since there has been a public disclosure, the Court "shall dismiss [the] action" unless Relator is an original source and the government does not oppose dismissal. 31 U.S.C.

§ 3730(e)(4)(A). A person is an "original source" if, prior to the public disclosure, that person has voluntarily disclosed to the government the information on which the transactions in a claim are based, or that person has knowledge that is independent of, and materially adds to, the publicly disclosed transactions. *Id.*

Relator is not an original source of any of the information underlying its claims. Because Relator's knowledge is derived purely from public information, Relator cannot have known of its claims before the public disclosures occurred, leaving Relator ineligible as an original source under either variant of the exception. Under the first, a relator necessarily must have preexisting knowledge in order to provide it to the government before the public disclosure. 31 U.S.C. § 3730(e)(4)(B)(i). Relator had no such knowledge and the Complaint contains no facts indicating that such a disclosure occurred. Nor can Relator meet the second test. Although the 2010 FCA amendments removed the requirement for "direct" knowledge, the FCA still currently requires "independent" knowledge, and Relator has none. *See* 31 U.S.C. § 3730(e)(4)(B)(ii). "To prove independent knowledge relators have to show they had relevant evidence of fraud prior to the public disclosure." *Amphastar Pharms. Inc. v. Aventis Pharma SA*, 856 F.3d 696, 705 (9th Cir. 2017) (internal quotation marks omitted); *Malhotra v. Steinberg*, 770 F.3d 853, 860 (9th Cir. 2014) (requiring relators "to show that they knew of the information underlying the alleged scheme before" the public disclosure). Relator cannot satisfy this requirement because it has no knowledge beyond what has already been publicly disclosed. One glaring example of this fact is how Relator, when alleging that Golden Empire's reported jobs number is inflated, is forced to rely on generic office density information from the Internet because Relator has no independent knowledge of fundamentally how, or where, Golden Empire's business operates.

Finally, Relator claims that to the extent there has been a "public disclosure unknown to the Relator, it is the 'original source'" of that information because it "voluntarily provid[ed] this information to the United States Government prior to filing this *qui tam* action." Complaint ¶ 68. Merely parroting the standard for determining an original source without providing any factual basis for the claim is precisely the type of conclusory and circular allegations that cannot establish

that Relator is an original source. *See Twombly*, 550 U.S. at 545 (a "formulaic recitation of a cause of action's elements" is not sufficient to state a claim). The Complaint represents the classic "parasitic" lawsuit that the public disclosure bar is designed to prevent: it is sourced entirely from public information and brought by a relator who has "no significant information of [its] own to contribute." *Mateski*, 816 F.3d at 570, 577 (quoting *Graham Cty. Soil*, 559 U.S. at 294–95). Because Relator is not an original source, the claims in the Complaint are barred by the public disclosure bar and should be dismissed with prejudice.

## II. Relator is Incorrect that Mortgage Lenders are Ineligible for PPP Loans

The Complaint centers on the allegation that Golden Empire's PPP loan "was not authorized because [Golden Empire] is a money lending business and therefore ineligible to receive PPP loans." Complaint ¶ 4. That is incorrect. Paragraph 50 of the Complaint contains an excerpt of the SBA's guidance confirming that mortgage lenders can be eligible for PPP loans:

> (b) The limited circumstances under which certain businesses engaged in lending may be eligible are as follows . . . (ii) A mortgage servicing company that disburses loans and sells them within 14 calendar days of loan closing *is eligible*. Mortgage companies primarily engaged in the business of servicing loans are eligible. Mortgage companies that make loans and hold them in their portfolio are not eligible.

*See id.* (emphasis added). The Complaint readily fails because it does not address the applicability of these circumstances or the fact that mortgage companies are indeed eligible for PPP loans when, for example, they disburse loans and sell them within 14 days of closing. Relator is required to, but cannot, allege "something more" to show that Golden Empire does not qualify as a mortgage servicing company pursuant to the SBA guidance cited in the Complaint. *See In re Century Aluminum Co. Sec. Litig.*, 729 F.3d at 1108. Because Relator has not alleged any "facts tending to exclude the possibility that the alternative explanation is true" Relator's Complaint should be dismissed. *Id.*

## III. <u>Relator Provides No Plausible Basis for Challenging Golden Empire's Reported Number of Jobs</u>

Relator's allegations relating to Golden Empire's reported number of jobs on its PPP application are not only implausible on their face, but fall far short of the Rule 9(b) heightened pleading requirement. Relator merely supposes in its allegation that Golden Empire's reported 489 jobs was "inflated" and therefore Golden Empire's certifications on its PPP application were false under the FCA. Complaint ¶ 11. Relator's entire argument is that Golden Empire's corporate office is not large enough to house 489 employees and therefore Golden Empire cannot possibly have that many employees. *Id.*

While Relator alleges that this number "cannot be correct" and how "[i]t is clear that [Golden Empire] inflated the true number of people on its staff," the Complaint contains no particularized facts that support an inference that this information was false other than Relator saying it is so. *Id.* Relator makes no attempt to address the obvious fact that companies, including Golden Empire, routinely employ personnel that work in offices other than the corporate headquarters. Moreover, while Relator generically references "online sources regarding company size" the Complaint contains no facts about what those sources are or how they contradict Golden Empire's reported number of jobs.

Relator also does not address the fact that PPP borrowers were required to submit documentation to the bank processing the loan to verify the reported number of employees. Relator does not, and cannot, allege any facts tending to show that any information Golden Empire provided in connection with its loan application was falsified or otherwise inaccurate.

The Complaint also ignores the SBA's employee calculation methods and fails to allege that Golden Empire's reported figure was incorrect under the accepted methods. As noted in the SBA guidance released on April 6, 2020 (Fundakowski Decl., Ex. 1) PPP borrowers were permitted to choose among three alternative methods to determine employee headcount. To state a valid claim under Rule 9(b), Relator is required to allege how Golden Empire's reported number of jobs was overstated under all three methods, which Relator cannot do. These deficiencies require dismissal of the Complaint.

**IV. Relator Fails to Allege Scienter as Required by the FCA**

The Complaint should also be dismissed because Relator has not adequately pleaded that Golden Empire "knowingly" violated the FCA. To satisfy that requirement, Relator must plead that Golden Empire either: (1) had actual knowledge of the information; (2) acted in deliberate ignorance of the truth or falsity of the information; or (3) acted in reckless disregard of the truth or falsity of the information. 31 U.S.C. § 3729(b)(1)(A)(i)-(iii). It is not sufficient merely to allege knowledge as to the existence of regulatory requirements; Relator must instead allege knowledge as to the false claim itself. *See United States ex rel. Durkin v. County of San Diego*, 300 F. Supp. 3d 1107, 1128-30 (S.D. Cal. 2018) (holding that relator "failed to sufficiently allege that Defendant made a false statement with deliberate ignorance or reckless disregard" because relator "fails to address how Defendant deliberately ignored or recklessly disregarded the truth or falsity of the statements; rather, Plaintiff focuses on Defendant's deliberate ignorance or reckless disregard for the requirements to obtain funding."). The Complaint merely recites FCA elements and offers generalized allegations that Golden Empire was "sophisticated" or "knew full well" of a *regulation* (which, as discussed above, Relator misinterprets) that mortgage lenders were ineligible for PPP loans. Complaint ¶ 9. Nowhere in the Complaint does Relator allege facts to show that any specific individuals knowingly provided false information on Golden Empire's PPP *application*. This deficiency requires dismissal of the Complaint.

**V. Relator Fails to State a Claim Against Howard Kootstra**

While the Complaint identifies Golden Empire's CEO, Howard Kootstra, as an individual defendant, it contains no facts that would plausibly support an allegation that Mr. Kootstra presented, or caused to be presented, the submission of any false claim. Indeed, Mr. Kootstra's name appears only *four times* across the Complaint's 74 paragraphs, with one of those instances merely identifying Mr. Kootstra as a party. Even where an allegation as to Mr. Kootstra as the CEO could theoretically be assumed from a collective reference to Golden Empire as an entity, such threadbare recitals of a cause of action's elements, supported by mere conclusory statements, are insufficient to meet the heightened Rule 9(b) requirement to state a fraud claim against Mr.

Kootstra in his individual capacity. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *United States v. Villaspring Health Care Ctr., Inc.*, 3:11-CV-43, 2011 WL 6337455, at *9 (E.D. Ky. Dec. 19, 2011) (holding that complaint failed to state a claim against individual defendant where complaint "has not alleged any facts to support allegations that [individual defendant] caused the claims in question to be submitted as required by the FCA" and noting how the complaint "barely mentions [defendant] by name."). Mr. Kootstra should be dismissed as a defendant.

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court grant this Motion to Dismiss the Complaint with prejudice.

Dated: February 16, 2024

Respectfully submitted,

By: */s/ David Jacobs*

R. David Jacobs (SBN 73545)
EPSTEIN BECKER & GREEN, P.C.
1925 Century Park East, Suite 500
Los Angeles, California 90067-2506
Telephone: 310.557.9517
Facsimile: 310.553.2165
DJacobs@ebglaw.com

George B. Breen (*pro hac vice* motion pending)
Daniel C. Fundakowski (*pro hac vice* motion pending)
EPSTEIN BECKER & GREEN, P.C.
1227 25th Street, NW, Suite 700
Washington, DC 20037
Telephone: 202.861.1823
Facsimile: 202.861.3523
GBreen@ebglaw.com
DFundakowski@ebglaw.com

*Attorneys for Defendants*
*Golden Empire Mortgage, Inc. &*
*Howard D. Kootstra*