UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. RELATOR, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>HOWARD D. KOOTSTRA and GOLDEN EMPIRE MORTGAGE, INC.,<br><br>Defendants. | No. 1:22-cv-00924-TLN-CDB<br><br>**ORDER** |

This matter is before the Court on Defendants Golden Empire Mortgage, Inc. ("GEM") and Howard D. Kootstra's ("Kootstra") (collectively, "Defendants") Motion to Dismiss. (ECF No. 33.) Plaintiff-Relator Relator LLC ("Relator"), who brings this *qui tam* action on behalf of the United States, filed an opposition. (ECF No. 40.) The United States did not file an opposition. Defendants filed a reply. (ECF No. 41.) For the reasons set forth below, the Court GRANTS Defendants' motion.

///
///
///
///
///

1

### I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises from Defendants' application for a Paycheck Protection Program ("PPP") loan.[1] (ECF No. 1 at 2.) The federal government implemented the PPP in response to the COVID-19 pandemic to provide eligible businesses with loans to cover payroll and other specified business-related expenses. (*Id.* at 12.) Businesses wishing to obtain a PPP loan were required to submit a loan application, which required businesses to acknowledge PPP rules and certify their eligibility to receive a loan. (*Id.*) Certain businesses were ineligible for PPP loans, such as businesses engaged in lending. (*Id.* at 19.)

Relator initiated this case under seal on July 26, 2022. (*Id.* at 1.) Relator alleges Defendants were ineligible to receive PPP loans as a mortgage lender and thus knowingly made false or fraudulent statements on their PPP application in violation of the False Claims Act ("FCA"), 31 U.S.C. § 3729(a)(1)(A–B). (*Id.* at 19–26.) The Department of Justice investigated the allegations and declined to intervene on October 13, 2023. (ECF No. 16.) The Court unsealed the Complaint on October 27, 2023. (ECF No. 22.) Defendants filed the instant motion to dismiss on February 16, 2024. (ECF No. 33.)

### II. STANDARD OF LAW

A motion to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Rule 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). Under notice pleading in federal court, the complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

---

[1] GEM is a mortgage lending company. (ECF No. 1 at 10.) Kootstra is GEM's Chief Executive Officer and Founder. (*Id.*) Relator refers to Defendants collectively in the Complaint, and the Court will do the same in this Order.

1    On a motion to dismiss, the factual allegations of the complaint must be accepted as true. *Cruz v. Beto*, 405 U.S. 319, 322 (1972). A court must give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963). A plaintiff need not allege "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief." *Twombly*, 550 U.S. at 570 (internal citation omitted).

Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of factual allegations." *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678. Thus, "[c]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss" for failure to state a claim. *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004) (citations omitted). Moreover, it is inappropriate to assume the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 680. While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, only where a plaintiff fails to "nudge [his or her] claims . . . across the line from conceivable to plausible[,]" is the complaint properly dismissed. *Id.* at 680 (internal quotations omitted).

1    In ruling on a motion to dismiss, a court may consider only the complaint, any exhibits
2    thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201.
3    *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988).  If a complaint fails to
4    state a plausible claim, "'[a] district court should grant leave to amend even if no request to
5    amend the pleading was made, unless it determines that the pleading could not possibly be cured
6    by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc)
7    (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

**III.   ANALYSIS**

Defendants move to dismiss for two reasons: (1) the FCA's public disclosure bar applies; and (2) Relator's claims fail to satisfy Rules 12(b)(6) and 9(b).  (ECF No. 33-1 at 6–7.)  As will be discussed, the Court agrees with Defendants that the public disclosure bar applies.  Therefore, the Court need not and does not address Defendants' remaining arguments.

A.   Applicable Law

"The FCA creates civil liability for 'any person who (A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; [or] (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim.'" *United States v. Allergan, Inc.*, 46 F.4th 991, 993 (9th Cir. 2022) (quoting 31 U.S.C. § 3729(a)(1)).  "A private person, known as a *qui tam* relator, may bring a civil action under the FCA in the name of the U.S. government." *Id.* at 994 (citing 31 U.S.C. § 3730(b)).  "The government may proceed with the action or decline to take over the action; if the government declines, then the relator can still pursue the action." *Id.* (citing 31 U.S.C. § 3730(b)(4)).  "The FCA incentivizes whistleblowers to come forward by offering successful relators up to thirty percent of the recovery." *Id.* (citing 31 U.S.C. § 3730(d)).  However, "the FCA . . . provides limits on who can bring a *qui tam* action and the sources of information upon which they can base their suit." *Id.*  "These 'bars' to suit are intended to prevent 'parasitic' or 'opportunistic' *qui tam* actions." *Id.* (citation omitted).

At issue in this case is the public disclosure bar.  The public disclosure bar is set forth in 31 U.S.C. § 3730(e)(4)(A), which provides:

4

> The court shall dismiss an action or claim under this section, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed—
>
> (i) in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party;
>
> (ii) in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or
>
> (iii) from the news media,
>
> unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

Thus, the public disclosure bar is triggered when: "(1) the disclosure at issue occurred through one of the channels specified in the statute; (2) the disclosure was public; and (3) the relator's action is substantially the same as the allegation or transaction publicly disclosed." *Id.* at 996 (citing *United States ex rel. Solis v. Millennium Pharms., Inc.*, 885 F.3d 623, 626 (9th Cir. 2018)) (internal quotations omitted).

    B. <u>Analysis</u>

Defendants argue Relator's Complaint is based on details about Defendants' PPP loan that were publicly disclosed on PandemicOversight.gov, which qualifies as either a "federal report" or "news media" under the public disclosure bar. (ECF No. 33-1 at 13–15.) Defendants further argue Relator is not an original source of the information in the Complaint. (*Id.* at 15–17.) In opposition, Relator argues PandemicOversight.gov does not constitute "news media" and the information on the website does not disclose that Defendants were ineligible to receive a PPP loan. (ECF No. 20 at 17–26.)

The Court will first address whether the information on the PandemicOversight.gov website constitutes a qualifying public disclosure, then whether the publicly disclosed information is substantially similar to Relator's claims, and lastly, whether Relator is an original source of the information in the Complaint.

///

///

///

                        *i.   Qualifying Public Disclosure*

Defendants contend PandemicOversight.gov, an official website of the United States government, qualifies as a "federal report" under the public disclosure bar because it is maintained and curated by the Pandemic Response Accountability Committee of the Council of Inspectors General on Integrity and Efficiency.[2] (ECF No. 33-1 at 14.) Alternatively, Defendants argue the website qualifies as "news media." (*Id.*) In opposition, Relator argues only that the website does not qualify as "news media." (ECF No. 40 at 20–23.) Relator does not respond to Defendants' argument about the website being a "federal report."

The Court agrees with Defendants that the website is a federal report. In *Schindler Elevator Corp. v. United States ex rel. Kirk*, the Supreme Court explained the "ordinary meaning" of "report is something that gives information or a notification, or an official or formal statement of facts or proceedings." 563 U.S. 401, 407 (2011) (internal citation, quotation marks, and alterations omitted). The Court reasoned that "[t]his broad ordinary meaning of 'report' is consistent with the generally broad scope of the FCA's public disclosure bar." *Id.*

In the instant case, PandemicOversight.gov clearly gives information. The website is titled "PPP Borrower Search." (ECF No. 33-2 at 11.) The website provides information about PPP borrowers such as the borrower's name, location, business type, industry, business age, lender, date the PPP loan was approved, loan amount, spending category, amount forgiven, number of loans, and jobs reported. (*Id.*) Considering *Schindler*'s broad definition of "report" and absent any argument to the contrary from Relator, the Court concludes the website constitutes a "federal report" within the meaning of the public disclosure bar.[3]

///

---

[2]  Defendants request the Court take judicial notice of excerpts of PPP borrower information for GEM obtained from PandemicOversight.gov. (ECF No. 33-2 at 2.) Noting no opposition from Relator, the Court GRANTS the request because the excerpts from an official website of the United States government contain facts that can "accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

[3]  Because the Court concludes the database is a "federal report," the Court need not and does not address whether it is also "news media."

*ii. Substantial Similarity*

In determining whether Relator's action is "substantially the same as the allegation or transaction publicly disclosed," the Court first looks to "whether the publicly available information . . . contained an 'allegation or transaction' of fraud." *U.S. ex rel. Mateski v. Raytheon Co.*, 816 F.3d 565, 570 (9th Cir. 2016). "The substance of the disclosure . . . need not contain an explicit 'allegation' of fraud, so long as the material elements of the allegedly fraudulent 'transaction' are disclosed in the public domain." *Id.* at 571 (citation omitted). The Court then decides whether the relator's claim and the prior disclosures are substantially similar. *Id.* at 573. Courts should not "read[ ] *qui tam* complaints at only the 'highest level of generality,'" thereby "wip[ing] out *qui tam* suits that rest on genuinely new and material information." *Id.* at 575–78 (citations omitted).

The parties appear to agree PandemicOversight.gov does not disclose an explicit "allegation" of fraud. Instead, the dispute seems to be whether the website discloses the material elements of a fraudulent "transaction." Both parties cite *Mateski* for the following formula used to determine substantial similarity:

> [I]f $X + Y = Z$, Z represents the allegation of fraud and X and Y represent its essential elements. In order to disclose the fraudulent transaction publicly, the combination of X and Y must be revealed, from which readers or listeners may infer Z, i.e., the conclusion that fraud has been committed.

816 F.3d at 571.

Defendants contend that every significant fact in Relator's Complaint is present on PandemicOversight.gov. (ECF No. 33-1 at 14.) Defendants argue applying the *Mateski* formula, "X" represents how Defendants applied for and received a PPP loan despite being a mortgage lender and "Y" represents how mortgage lenders were ineligible for PPP loans. (*Id.* at 15.) Defendants argue these two variables establish "Z" — an inference that fraud must have occurred. (*Id.*) In opposition, Relator argues the information on PandemicOversight.gov does not disclose that Defendants were ineligible to receive a PPP loan. (ECF No. 40 at 20–22.)

The Court again agrees with Defendants. The thrust of Relator's Complaint is that Defendants applied for and obtained a PPP loan despite knowing they were ineligible to do so as

7

a mortgage lender. Defendants' status as a mortgage lender and the fact that they obtained a PPP loan was publicly disclosed. Not only does Relator allege Defendants reported being a mortgage lender on the PPP application, but that information is also reflected on PandemicOversight.gov. (*See* ECF No. 1 at 5–6 (alleging GEM used NAICS Code 522292 on its PPP loan application, signifying it was a lending company that used real estate as collateral); *see also* ECF No. 33-2 (indicating GEM is a mortgage company in the real estate credit industry).) In other words, the material elements of the alleged fraud — that Defendants applied for a PPP loan despite being a mortgage lender — were publicly disclosed. From that information, "readers or listeners may infer . . . the conclusion that fraud has been committed" — namely, that Defendants falsely and/or fraudulently applied for a PPP loan despite being ineligible to do so. *Mateski*, 816 F.3d at 571.

The Court notes that Relator spends most of its opposition presenting general background information about the public disclosure bar rather than engaging in meaningful analysis or applying the law to the facts of the instant case. Specifically, within the eight pages Relator devotes to "argument" about the public disclosure bar, the Court counts less than eight sentences that reference the facts of the instant case. Further, those eight sentences lack clarity, substance, and citation to authority. To the extent Relator's argument is that Defendants' false certifications from the loan application are not publicly disclosed on PandemicOversight.gov, it appears the Government possessed all the relevant information to investigate the alleged fraud before Relator filed the Complaint. *See Mateski*, 816 F.3d at 574 ("[W]e sometimes have asked whether the Government was on notice to investigate the fraud before the relator filed his complaint — which is another way of thinking about substantial similarity."); *see also Allergan, Inc.*, 46 F.4th at 995 ("It is salient and potentially controlling that the key factual information underlying [the relator's] complaint was all publicly disclosed and much could be found in websites maintained by the [Patent and Trademark Office] and other government agencies.").

For these reasons, the Court concludes the material elements of the allegedly fraudulent "transaction" were disclosed in the public domain and Relator's claim and the prior disclosures are substantially similar.

///

*iii. Original Source*

Lastly, Relator fails to argue that it is an "original source" for purposes of circumventing the public disclosure bar. *See United States ex rel. Solis v. Millennium Pharms., Inc.*, 445 F. Supp. 3d 786, 795 (E.D. Cal. 2020), *aff'd sub nom. Solis v. Millennium Pharms., Inc.*, 852 F. App'x 298 (9th Cir. 2021) ("Relator bears the burden of establishing that he qualifies as an original source."). An "original source" is defined in relevant part as an individual who "has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action under this section." 31 U.S.C. § 3730(e)(4)(B).

Relator's allegations appear to be based entirely on public information. Relator does not cite — nor can the Court locate — any information in the Complaint that materially adds to the public disclosures or shows that Relator had any independent knowledge of the alleged fraud. *See United States ex rel. Hastings v. Wells Fargo Bank, NA, Inc.*, 656 Fed. App'x 328, 331–32 (9th Cir. 2016) ("Allegations do not materially add to public disclosures when they provide only background information and details relating to the alleged fraud — they must add value to what the government already knew.").

For all these reasons, the Court GRANTS Defendants' motion based on the public disclosure bar. Indeed, Relator's Complaint appears to be at odds with the purpose of qui tam actions. *See Allergan, Inc.*, 46 F.4th at 994 ("The public disclosure bar seeks to strike a balance between 'encourag[ing] suits by whistle-blowers with genuinely valuable information, while discouraging litigation by plaintiffs who have no significant information of their own to contribute.'"). Although the Court has serious doubts as to whether Relator can cure the deficiencies addressed herein, the Court will give Relator an opportunity to amend based on the liberal standard in favor of granting leave to amend. *Lopez*, 203 F.3d at 1130.

**IV. CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendants' Motion to Dismiss and DISMISSES Relator's Complaint with leave to amend. (ECF No. 33.) Relator may file an amended complaint not later than thirty (30) days from the electronic filing date of this Order.

Defendants' responsive pleading is due not later than twenty-one (21) days after Relator files an amended complaint. If Relator opts not to file an amended complaint, the Court will dismiss this action and close the case.

    IT IS SO ORDERED.

Date: August 5, 2024

                                            _____
                                            Troy L. Nunley
                                            United States District Judge